# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| **ERRON J. JACKSON,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 3:16-CV-2957-G-BK |
| § | |
| **NANCY BERRYHILL,** § | |
| **Acting Commissioner of Social** § | |
| **Security,** § | |
| § | |
| **Defendant.** § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to *Special Order 3* and 28 U.S.C. § 636(b)(1)(B)&(C), the parties' cross motions for summary judgment are before the Court for findings of fact and a recommendation of the disposition. For the reasons that follow, Plaintiff's *Motion for Summary Judgment*, Doc. 15, should be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 17, should be **DENIED**, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for entry of an award of benefits to Plaintiff.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed an application for supplemental security income in January 2013, alleging a disability onset date in January 2008. Doc. 12-7 at 2. His application was denied at all administrative levels, and he now appeals to the United States District Court pursuant to 42 U.S.C. § 405(g). Doc. 12-4 at 2; Doc. 12-4 at 10.

## B. Facts

Plaintiff was 24 years old on the date he applied for benefits. Doc. 12-7 at 2. He has never attended school or worked. Doc. 12-8 at 5; Doc. 12-9 at 11. In addition to being illiterate, Plaintiff has been diagnosed with schizoaffective disorder, a seizure disorder dating back to adolescence, and borderline intellectual functioning, and he has an IQ score of 64. Doc. 12-8 at 4; Doc. 12-10 at 26; Doc. 12-12 at 34; Doc. 12-14 at 28; Doc. 12-14 at 33. He reported that he was sexually abused when he was 11 years old and continued to have flashbacks and nightmares about it. Doc. 12-14 at 3. In August 2014, Plaintiff described hearing voices and seeing shadow humans who follow him around almost constantly, and he experienced excessive sadness, poor sleep, and irritability. Doc. 12-14 at 33. Plaintiff lives at home with his parents, relies on his mother to give him his medications because he cannot read the labels, does not know how to drive or use public transportation, and cannot count, read a map or read road signs. Doc. 12-8 at 13-14; Doc. 12-14 at 33.

Since filing for benefits, Plaintiff began experiencing more seizures, which are predicated by him acting very angry and agitated and seeing and hearing people and voices. Doc. 12-14 at 5. The seizures last between 30 seconds and two minutes, during which he sometimes loses consciousness. Doc. 12-14 at 5. After a seizure, Plaintiff feels "very tired, weak, confused, feels heavy all over," and he has difficulty understanding language and recognizing people he knows. Doc. 12-8 at 76; Doc. 12-14 at 29, 32. Plaintiff reported that he spends most of his day sitting outside in his yard "staring at the ceiling," but he occasionally walked to visit friends or family. Doc. 12-14 at 33. When he used prescription drugs, his seizure frequency decreased, as did his cognitive and psychiatric symptoms, although he continued to have hallucinations. Doc. 12-14

2

at 10; Doc. 12-14 at 33. In August 2014, Plaintiff was reported to have seizures once every two weeks, down from three-to-four per week in the prior six months. Doc. 12-14 at 5.

Five doctors have offered opinions about Plaintiff's mental functioning. In March 2013, Plaintiff presented to consultative examiner Dr. Teresa Jackson, Psy.D. for an evaluation. Dr. Jackson noted that Plaintiff's hygiene was poor, and he reported feelings of paranoia, depression, suicidal thoughts, difficulty focusing, and racing thoughts. Doc. 12-10 at 22-23. Plaintiff informed Dr. Jackson that he has seizures, but had only been treated for them once in the emergency room. Doc. 12-10 at 25. Dr. Jackson found that Plaintiff is illiterate, has unsatisfactory short-term memory, has schizoaffective disorder (depressive type), suffered from child neglect, has a "guarded to poor" prognosis, based on the level of paranoia he is experiencing in his daily functioning, and a Global Assessment of Functioning ("GAF") score of 41.[1] Doc. 12-10 at 26-27. She found Plaintiff to be in the bottom 0.1 percentile in reading, writing, and math although she noted that he "appeared to put forth good effort to complete all tasks." Doc. 12-10 at 27. Dr. Jackson concluded that Plaintiff's academic and intellectual abilities limited his ability to be competitive in the work force and opined that he would not be able to manage any benefits independently. Doc. 12-10 at 27. Additionally, from December 2011 through October 2013, Plaintiff's mental health care providers at Metrocare frequently noted his paranoid delusions and psychotic behavior and diagnosed him as having schizoaffective disorder. Doc. 12-10 at 11; Doc. 12-15 at 23, 27-28, 32, 35, 38.

---

[1] A GAF score of 41-50 indicates that the individual has serious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) *or* any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work). *See* AMERICAN PSYCHIATRIC ASSOCIATION: *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) ("DSM-IV-TR").

In August and December 2013, two state medical consultants reviewed some of Plaintiff's records, finding that his impairments were not severe. Doc. 12-4 at 6; Doc. 12-4 at 15. Both physicians noted Plaintiff's "impairment diagnosis" as schizophrenia. Doc. 12-4 at 7; Doc. 12-4 at 15. In December 2013, medical consultant Dr. Susan Posey, Psy.D, found that Plaintiff was moderately limited in his ability to (1) accept instructions and respond appropriately to criticism from supervisors; (2) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (3) maintain attention and concentration for extended periods. Doc. 12-4 at 18-19.

In August 2014, Dr. Wendy Ringe, Ph.D., conducted a neuropsychological evaluation of Plaintiff. Doc. 12-14 at 32. Plaintiff reported that throughout his 20's, he had approximately one seizure per week whenever he "got mad," but his seizures had abated over the prior six months due to the medications he was taking for his psychiatric symptoms. Doc. 12-14 at 33. Doc. 12-14 at 33. Dr. Ringe found that Plaintiff has "very low" visual attention, processing speed, verbal learning and recall performance, and mild to moderately impaired "fine motor coordination on a timed task" in both upper extremities although he performed adequately on measures of attention, abstraction, and problem solving, and visuospatial perception. Doc. 12-14 at 34-35. Dr. Ringe further opined that because of his "current difficulty maintaining basic activities of daily living, … he should continue to live in a structured environment in which he can rely upon trusted others for assistance." Doc. 12-14 at 35.

## C. Administrative Hearing and Decision

At the administrative hearing, a vocational expert ("VE") testified that Plaintiff could work as a produce sorter, with there being 1,897 such positions in the national economy, and as a silver wrapper, with the number of available positions being unspecified. Doc. 12-3 at 73.

Subsequently, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of light work. Doc. 12-3 at 17-18. Given that RFC, the ALJ concluded that Plaintiff was not disabled because he could work as a produce sorter or silver wrapper, and that such jobs existed in significant numbers in the national economy. Doc. 12-3 at 21.

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden

5

shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their citation to the supporting evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

### III. ARGUMENT AND ANALYSIS

Although Plaintiff raises six issues on appeal, only the first is addressed here because it is case dispositive.[2] Plaintiff asserts that the ALJ erred in finding that there are a significant number of jobs in the economy that she can perform because 1,897 jobs nationally is not a sufficient number considering the size of Texas, Plaintiff's limited ability to travel due to his medical conditions, and his need to live in a structured environment. Doc. 16 at 12-14. Defendant responds that the Commissioner met her burden of proving that a significant number of other jobs existed that Plaintiff could perform. Doc. 18 at 6.

The Social Security regulations provide that the phrase jobs "existing in the national economy," does not encompass the entire United States, but rather, the Commissioner considers "that work exists . . . in significant numbers when it exists in significant numbers either in the region where you live or in several other regions of the country . . . Isolated jobs that exist in only very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'" 20 C.F.R. § 416.966. However, "it does not matter whether . . . [w]ork exists in the immediate area in which you live." *Id.*

The Court of Appeals for the Fifth Circuit has not, in a published opinion, determined what constitutes a "significant number" of jobs. However, the Sixth Circuit held that a "judge should consider many criteria in determining whether work exists in significant numbers, some

---

[2] The remaining issues are whether (1) the silver wrapper position requires a higher level of "GED reasoning" than the ALJ found Mr. Jackson to have; (2) the ALJ erroneously changed Plaintiff's diagnosis from "schizoaffective disorder" to "depression"; (3) the ALJ erred in failing to bring medical expertise to bear on the question of what "exertional limitations" and "safety" restrictions were needed to accommodate Plaintiff's seizure disorder; (4) the ALJ erred in giving Dr. Ringe's medical opinion "substantial weight," but omitted key mental limitations that her testing revealed; and (5) the ALJ erred by not weighing three conclusions reached by Dr. Posey despite purporting to rely on her mental RFC assessment. Doc. 16 at 2.

7

of which might include: the level of claimant's disability; the reliability of the [VE]'s testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (finding 1,350 local jobs significant). This test has been adopted by the Eighth Circuit and the Tenth Circuit as well. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (650-900 jobs in state sufficient); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 regional jobs sufficient); *see also Johnson v. Chater*, 108 F.3d 178, 180 & n.3 (8th Cir. 1997) (200 local and 10,000 national jobs sufficient); *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (1,400 jobs sufficient); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 local, 1,600 state, and 80,000 nationwide jobs sufficient); . *Lirley v. Barnhart*, 124 Fed. Appx. 283, 284 (5th Cir. 2005) (finding that 50,000 jobs in the national economy was a significant number); Monroe v. Shalala, 55 F.3d 633, at *2 (5th Cir. May 5, 1995) (unpublished) (3,259 jobs in the Louisiana economy constituted a significant number of jobs); *Doddy v. Comm'r, Soc. Sec. Admin.*, No. 12-cv-384, 2014 WL 1268567, at *7 (E.D. Tex. 2014) (citing to *Hall* and finding that 3,400 jobs in the state and 61,000 jobs in the national economy represented a significant number); *Caronia v. Colvin*, No. 12-cv-595-Y, 2013 WL 5192904, at *7 (N.D. Tex. 2013) (Means, J.) (2,000 to 3,000 jobs in Texas and 50,000 in national economy was sufficient); *Thompson v. Astrue*, No. 08-cv-1134-G, 2010 WL 2816677, at *7 (N.D. Tex. 2010) (Kaplan, J.) (applying the *Hall* factors and finding that 105,000 jobs in the national economy was sufficient), *adopted by* 2010 WL 2816680 (N.D. Tex. 2010) (Fish, J.); *Mercer v. Halter*, No. 00-cv-1257, 2001 WL 257842, at *6 (N.D. Tex. 2001) (500 jobs in Texas and 5,000 jobs nationwide sufficient) (Bleil, M.J.); *but cf. Merical v. Sec'y of Health and Human Serv.*, 892 F.Supp. 843, 847 (E.D. Tex. 1995) (relying on *Hall* and holding that 870 jobs in Texas

8

was not a "significant number."); *Walker v. Shalala*, No. H-93-2507, 1994 WL 171209, at *2 (S.D. Tex. 1994) (holding that 1,800 jobs in Texas and 18,000 nationally was not significant). The VE in this case found that there were 1,897 produce sorter jobs nationwide and did not state how many silver wrapper jobs were available. In light of the cases cited and section 416.966, that does not constitute a significant number. As such, Plaintiff is entitled to summary judgment on this claim of error.

Plaintiff requests that if the Court finds in his favor, it remand the case and order the Commissioner to award him benefits outright rather than set it for another hearing. Doc. 15 at 29. Alternatively, he requests that the case be assigned to a different ALJ. Defendant does not address this request.

The fourth sentence of 42 U.S.C. § 405(g) provides that "[t]he [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). When an ALJ's decision is not supported by substantial evidence, and the uncontroverted evidence clearly establishes that the claimant is entitled to benefits, the case may be remanded with the instruction to make an award of benefits. *See Taylor v. Bowen*, 782 F.2d 1294, 1298-99 (5th Cir. 1986). The record, however, must enable the court to "determine definitively that the claimant is entitled to benefits." *Armstrong v. Astrue*, No. 08-CV-045-C, 2009 WL 3029772, *10 (N.D. Tex. Sept. 22, 2009) (Cummings, J.). The claimant must carry "the very high burden of establishing 'disability without any doubt.'" *Id.* at *11 (citation omitted). Inconsistencies and unresolved issues in the record preclude an immediate award of benefits. *Wells v. Barnhart*, 127 F. App'x 717, 718 (5th Cir. 2005) (per

9

curiam). The Commissioner, not the court, resolves evidentiary conflicts. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

In this case, the healthcare providers who met Plaintiff face-to-face found that he is schizophrenic and illiterate, and he suffers from seizures, paranoid delusions, psychotic behavior, and auditory and visual hallucinations. The only physician to assess Plaintiff's GAF score placed it at 41, which has been described as incompatible with employment. *See* Doc. 16 at 9 (citing cases). Moreover, Defendant does not seriously dispute, as the mental health care professionals have found, that Plaintiff has poor short term memory, an IQ of 64, an inability to manage any benefits awarded, a guarded to poor prognosis due to his paranoia, and a GAF score which indicates that he has a serious impairment in social, occupational, or school functioning. *See* DSM-IV-TR.

Both Dr. Jackson and Dr. Ringe surmised that Plaintiff's academic and intellectual abilities as well as his difficulty maintaining activities of daily living, limited his ability to be competitive in the work force. Moreover, Defendant does not dispute Dr. Ringe's findings that Plaintiff has "very low" visual attention, processing speed, verbal learning, and recall performance as well as bilateral impairment in fine motor coordination. Dr. Ringe further opined that Plaintiff should continue living with his parents because he needs a structured environment and people he could rely on to help him, which would limit significantly his ability to obtain employment. *See Hall*, 837 F.2d at 275 (noting that one factor to consider in determining the number of available jobs is the distance the claimant is capable of travelling to engage in the assigned work).

In light of the uncontroverted evidence of record, the ALJ's decision that Plaintiff is capable of sustaining gainful employment is not supported by substantial evidence. *Taylor*, 782

F.2d 1298-99. Indeed, such evidence establishes Plaintiff's entitlement to benefits. *Armstrong, 2009 WL 3029772*, at \*10. Although the ALJ did not consider whether Plaintiff meets or equals Listing 12.03, governing schizophrenia spectrum and other psychotic disorders, Plaintiff's impairment falls under that category.[3] "These disorders are characterized by delusions, hallucinations, disorganized speech, or grossly disorganized or catatonic behavior, causing a clinically significant decline in functioning. Symptoms and signs may include, but are not limited to, inability to initiate and persist in goal-directed activities, social withdrawal, flat or inappropriate affect, poverty of thought and speech, loss of interest or pleasure, disturbances of mood, odd beliefs and mannerisms, and paranoia." Listing 12, 20 C.F.R. ch. III, pt. 404, subpt. P, app. 1. As described above, the medical record is replete with evidence that Plaintiff exhibited such serious and persistent behaviors, symptoms, and signs such that he meets or, at a minimum, equals Listing 12.03. Accordingly, this case should be remanded to the Commissioner for an award of benefits in Plaintiff's favor.

## IV. CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment*, Doc. 15, be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 17, be **DENIED**, and the Commissioner's decision be **REVERSED AND REMANDED** for entry of

---

[3] The ALJ provided no explanation for finding that Plaintiff suffered only from depression rather than the schizoaffective disorder with which Plaintiff was repeatedly diagnosed.

an award of benefits in Plaintiff's favor.

**SO RECOMMENDED** on September 11, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute*, 28 U.S.C. §636(b)(1) (extending the time to file objections from ten to fourteen days).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE